IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI S. MOTT, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 12-5244 |
| v. | : | |
| | : | |
| DRIVELINE RETAIL MERCHANDISING, INC., | : | |
| Defendant. | : | |

May _21__, 2014                                                                                           Anita B. Brody, J.

# MEMORANDUM

Plaintiffs Lori S. Mott, Cynthia Cotten, Susan Gibbs, Susan Moore, and Judy Ratcliff, on behalf of themselves and all others similarly situated, bring suit against Defendant Driveline Retail Merchandising Inc. ("Driveline") alleging that Driveline failed to pay Plaintiffs for required work in violation of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 & 207(a).[1] Pursuant to the FLSA's collective action provision at 29 U.S.C. § 216(b), Plaintiffs move for an order (1) granting conditional certification of a class comprised of all persons who are or were employed by Driveline as merchandisers of any kind during the three years preceding the filing of this lawsuit; (2) compelling Driveline to provide Plaintiffs' attorneys with the names and last known contact information for all potential class members; (3) authorizing Plaintiffs' attorneys to send court-supervised notice to all potential class members; and (4) providing for a 120-day period from the date notices are sent for potential class members to join this action by filing consents to sue with the Court. For the reasons discussed below, I will grant Plaintiffs' motion.

---

[1] I exercise subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

1

I.  BACKGROUND

Driveline provides in-store marketing and retail services to consumer products companies and national retailers.  The five named Plaintiffs are former Driveline employees who worked as hourly-paid "Merchandisers," "Master Merchandisers," or "Resetters" ("Merchandisers") across approximately 14 states.  As Merchandisers, Plaintiffs performed services related to the display of products and promotional materials in retail stores.  The Plaintiffs' stated wages ranged from $8 to $11 per hour.

According to the Complaint, Plaintiffs began their workday at home by logging on to Driveline's intranet.  Plaintiffs responded to email messages, downloaded and printed work orders, reviewed instructions for each merchandising job, and mapped routes to store locations.  Plaintiffs were also required to print work authorization letters and work completion forms to be signed by the manager of each store in which they worked.  In addition, Plaintiffs began each day by loading into their personal vehicles displays and other marketing materials sent to them by Driveline that they then transported to their assigned retail locations.  After completing these administrative tasks at home, Plaintiffs drove to their first retail store of the day.

After completing their last assigned store call of the day, Plaintiffs were required to again log on to Driveline's intranet.  Plaintiffs uploaded signed work orders associated with in-store work performed that day; completed questionnaires associated with each work order; uploaded digital photographs taken during the day associated with each work order; and completed and submitted inventory reports.

Plaintiffs allege that Driveline violated the wage and overtime provisions of the FLSA by not paying them for hours they were required to work "off the clock" on Driveline's behalf.  In particular, Plaintiffs allege that they were not paid for two categories of time worked – (1) the

drive time between home and their first assigned retail location and (2) the time spent on administrative work at home in the mornings and evenings as well as the drive time between store locations during the work day.

Driveline denies these allegations and asserts that its policy is to compensate fully all employees for all time worked. With respect to the claim for uncompensated drive time at the beginning of the day, Driveline argues that its policy of not paying for commute time is legal under federal law. With respect to the claim for uncompensated administrative time and drive time between store locations during the day, Driveline asserts that Merchandisers are paid an allotted time for each merchandising job, and those allotted times are calculated to include administrative time and drive time between stores. If a Merchandiser needs additional time to complete a task, Driveline instructs Merchandisers to request written pre-approval from their District Managers. Driveline argues that regardless of pre-approval, Merchandisers can submit their time worked to their District Managers and be paid for the additional time.

## II.  LEGAL STANDARD

Under the collective action provision of the FLSA, an employee alleging an FLSA violation can bring a suit on behalf of "himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). To be included in a collective action, plaintiffs must be "similarly situated" and give written consent. *Id*.

"Courts in [this] Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). At the first step, the named plaintiff must make a "modest factual showing" that the employees identified in the complaint are "similarly situated." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012). The court conducts a

preliminary inquiry into whether the plaintiff's proposed class members were collectively "the victims of a single decision, policy, or plan . . . ." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3rd Cir. 2007) (citing *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). The plaintiff must produce some evidence "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3rd Cir. 2011), *rev'd on other grounds*, *Symczyk*, 133 S. Ct. at 1526. The plaintiff has "a very lenient burden to bear at this initial stage of certification." *Lugo v. Farmer's Pride Inc.*, No. 07-0749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008); *Smith v. Sovereign Bancorp, Inc.*, No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003) (stressing that "modest factual showing" is an "extremely lenient standard"). "The Court does not evaluate the merits of the claim at this stage . . . ." *Lugo*, 2008 WL 638237, at *3. "If the plaintiff meets this lenient standard, the court grants only conditional certification for the purpose of notice and discovery." *Id*.

At the second stage, with the benefit of discovery, the court "makes a conclusive determination that every plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 193. The plaintiff bears a heavier burden of proof at this second stage and must prove, by a preponderance of the evidence, that the proposed collective plaintiffs are similarly situated. *Zavala*, 691 F.3d at 536. Courts are to take an ad hoc approach, "consider[ing] all the relevant factors and mak[ing] a factual determination on a case-by-case basis." *Id.* The relevant factors include "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . ." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). If the conditional group of

plaintiffs are not in fact similarly situated to the named plaintiffs, the group is then decertified, the opt-in plaintiffs are dismissed without prejudice, and any remaining plaintiffs are permitted to move onto the trial stage of litigation. *Lugo*, 2008 WL 638237, at *3.

## III. DISCUSSION

Plaintiffs seek to certify a class comprised of all persons who are or were employed by Driveline as merchandisers of any kind during the three years preceding the filing of this lawsuit. During the three-year time period, Driveline employed approximately 27,095 Merchandisers. In addition to the five named Plaintiffs, approximately 40 opt-in plaintiffs from across the country have already joined the litigation by filing consents with the Court.

Driveline's opposition to the motion for conditional certification can be organized into two arguments. First, Driveline argues that Plaintiffs have failed to identify a common Driveline corporate policy or practice that violates the FLSA. Second, Driveline argues that Plaintiffs have failed to show that they are similarly situated to the proposed class of Merchandisers nationwide.

### A. Evidence of Uniform Company Policy

#### 1. Drive Time between Home and First Retail Location

Plaintiffs assert that Driveline enforces a company-wide policy of not paying Merchandisers for the time they spend driving between their home and their first store call of the day. Under Driveline's January 2013 Terms of Work Acceptance Policy, Driveline will not pay drive time, or reimburse mileage, for the normal commute from a Merchandiser's home to the first store on a given day unless the Merchandiser's home is more than 30 miles from the first store. Pls.' Br. Ex. F, Jan. 2013 "Terms of Work Acceptance." Plaintiffs argue that Driveline's policy violates the "continuous workday" rule under which any travel time that occurs after the beginning of an employee's first principal activity and before the end of an employee's last

principal activity on any workday must be included in hours worked. *See* 29 C.F.R. § 790.6(a). Plaintiffs allege that the administrative tasks performed at home each morning constitute a principal activity, and thus their subsequent drive time between home and their first store call should be compensable.

Driveline does not dispute that it is company policy not to compensate for time spent commuting from home to the first job of the day. Defs.' Br. at 19. Instead, Driveline argues that neither its formal nor informal policies require merchandisers to log on to their computers at home in the morning, and administrative tasks can be performed any time prior to visiting a store location from any computer with internet access. Thus, according to Driveline, the "continuous workday rule" is not applicable, and Driveline's policy of not paying for commute time is legal.

While Driveline's arguments may have merit, legality is not decided at this stage of the action. *Lugo*, 2008 WL 638237, at *3. "The thrust of the Court's inquiry at this juncture—i.e., at the conditional certification stage—'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.' " *Karlo v. Pittsburgh Glass Works, LLC*, 880 F. Supp. 2d 629, 643 (W.D. Pa. 2012) (citation omitted). Plaintiffs need only make a modest factual showing of that the members of the proposed class were collectively victims of a uniform Driveline policy, plan, or scheme. Plaintiffs have met this burden with evidence of Driveline's nationwide policy against compensation for morning drive time.

**2. Administrative Time Before and After Work and Drive Time Between Retail Locations**

Second, Plaintiffs assert that Driveline enforces a company-wide policy of not paying Merchandisers for the time they spend completing necessary administrative tasks at the beginning and the end of the day and driving between retail locations during the day. As

described by both Plaintiffs and Driveline, Driveline pays its Merchandisers an allotted amount of time on each job. *See* Pls.' Br. Ex. F, Jan. 2013 "Terms of Work Acceptance" ("I agree to complete the work within the time allowed for the work."); Defs.' Br. at 4, 7. In some instances, the Driveline customer specifies the amount of time for which it will pay for work on a job. Defs.' Br. Ex. 1, Bennett Decl. ¶ 18. In other situations, Driveline conducts time studies to establish a time limit for performing the in-store work and related tasks. Defs.' Br. Ex. 1, Bennett Decl. ¶ 19; Ex. 3, Bennett Dep. 18:1-9 (explaining that the time studies are conducted by Michelle Sher, Driveline's Chief Client Services Officer). The amount of time allocated for each job is supposed to include any administrative time at the beginning or the end of the day and any drive time from store to store. *See* Pls.' Br. Ex. F, Jan. 2013 "Terms of Work Acceptance" ("I understand and agree that the time allowed for the work will include administrative time (e.g., preparation for routes, completion of work orders, submission of digital photographs, etc.) as well as store time ("in-store time")); Defs.' Br. Ex. 1, Bennett Decl. ¶ 39. Driveline's payroll system – the V3 system in place since December 2010 – allows for only the allotted time to be submitted for payment. Defs.' Br. Ex. 1, Bennett Decl. ¶ 26. The "Driveline Conditions of Work Policy" states: "Effective September 1, 2011, Driveline will no longer accept or process any payroll time over the payroll time allotted on work order." Pls.' Br. Ex. G. Plaintiffs allege that they had to use all of the allotted time just to complete the in-store portion of their assigned tasks. Plaintiffs allege that as a result of Driveline's payroll policy that prohibits the submission of hours worked in addition to the allotted time, they were not paid for actual time worked on administrative tasks and drive time between stores.

In response, Driveline argues that its policy is to compensate fully all employees for all time they actually work, and it instructs Merchandisers to seek written, pre-approval for any

7

necessary hours beyond the allotted time. *See* Pls.' Br. Ex. G; Ex. F, Jan. 2013 "Terms of Work Acceptance" ("I further understand and agree that if additional time is needed to complete the work, such additional time must be pre-approved by my Driveline manager in writing."). Driveline emphasizes that regardless of pre-approval, Merchandisers can submit their time worked to their District Managers and be paid for the additional time. Driveline argues that Plaintiffs cannot show a company-wide policy of not paying for actual time worked and that any failure to compensate Merchandisers for additional time worked is the result of idiosyncratic understandings of its policies held by District Managers or Merchandisers. *See* Defs.' Br. Ex. 14, Thurston Dep. at 23, 26 (Merchandiser asked her manager for compensation for additional time, but being after told no, she never asked again for additional time); Ex. 18, King Dep. at 16, 17 (Merchandiser's District Manager always approved the time she needed to get additional work done); Ex. 18, N. Wyatt Dep. at 12 (Merchandiser believed based on email message that there was no additional time above the allotted time).

Again, Driveline's response is an insufficient basis on which to deny conditional class certification. *See Chabrier v. Wilmington Fin., Inc.*, No. 06-4176, 2006 WL 3742774, *4 (E.D. Pa. Dec. 13, 2006) (refusing to deny conditional certification based on evidence of Defendant's official policy against "off the clock" work). Plaintiffs have presented overwhelming deposition testimony that both the named Plaintiffs and the proposed class members were victims of a uniform Driveline payroll and compensation system under which Merchandisers working excess time on administrative tasks and driving were unable to enter that time into Driveline's payroll system and never paid for it. *See* Pls.' Br. Ex. H, Mott Dep. 49:14-23; Ex. I, Cotten Dep. 37:18-25, 38:1; Ex. N, Austin-Cash Dep. 113:18-25, 123:19-24; Ex. P, Barlow Dep. 56:19-25, 57:1-10; Ex. Q, Borders Dep. 24:23-25, 25:1-19; Ex. R, Brodsky Dep. 34:14-25, 35:1-18; Ex. V, Herford

Dep. 37:4-8; Ex. X, King Dep. 19:25, 20:1-7; Ex. Z, Lamberson Dep. 27:19-25, 28:1; Ex. EE, Perino Dep. 43:1-25; Ex. FF, Ringrose Dep. 28:4-8; Ex. HH, Smith Dep. 31:4-13.  By Driveline's own admission, Merchandisers are "paid using the same system, and they are all subject to the same policy which requires them to perform tasks within the allotted time." Defs.' Br. at 25.  Driveline's corporate headquarters sets the time allotments for most jobs.  Defs.' Br. Ex. 3, Bennett Dep. 18:1-9.  The "Driveline Conditions of Work Policy" applicable to all merchandising jobs states that Driveline will not process any payroll time over the time allotted on the work order because it will not accept payroll hours that it cannot bill back to its clients.  Pls.' Br. Ex. G.  Any dissimilarities in the way that Driveline's payroll and compensation policies were implemented can be examined at the second step certification, after discovery is complete and when the impact or scope of the policies are more fully known.  *See Pereira v. Footlocker*, 261 F.R.D. 60, 66 (E.D. Pa. 2009) (conditionally certifying a class despite affidavits provided by Footlocker in which putative class members directly refuted the plaintiff's allegations and detailed the individualized circumstances of their communications with their managers) ("While this evidence may be significant after discovery and during step two of the process, at this stage, it does not compel us to deny preliminary certification.").  *Cf. Postiglione v. Crossmark, Inc.*, No. 11-960, 2012 WL 5829793, at *6 (E.D. Pa. Nov. 15, 2012) (applying a more exacting standard and denying conditional certification where plaintiffs' affirmations regarding non-payment for administrative and drive time alleged different policies regarding compensation).

### B. Evidence that Named Plaintiffs and Proposed Class Are Similarly Situated

Although it has not articulated a specific test to determine whether plaintiffs are similarly situated, the Third Circuit recently cited the Second Circuit's characterization of the court's role

at this initial step as "determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist." *Zavala*, 691 F.3d at 536 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2nd Cir. 2010)). Because of the lenient standard at this stage, some district court have found that the plaintiff's evidence sufficient where declarations and deposition testimony detail common job duties and responsibilities across the named plaintiffs and the proposed class. *See In Re: Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, MDL 2056, 2010 WL 3447783, at * (W.D. Pa. Aug. 13, 2010); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 896-97 (N.D. Iowa 2008).

Plaintiffs have more than met their burden that they are similarly situated to other proposed class members. By Driveline's own admission, Plaintiffs and the proposed class are all Merchandisers with similar job descriptions subject to the same policies. Defs.' Br. at 25. In addition to the numerous depositions cited above in which the named Plaintiffs and proposed opt-in plaintiffs describe similar work responsibilities, Plaintiffs provide at least seven affirmations in which both a named Plaintiff and proposed opt-in plaintiffs describe working as hourly-paid Merchandisers responsible for in-store merchandising services at retail locations near their homes as well as administrative work on Driveline's intranet before and after that in-store work. *See* Pls.' Br. Ex. L, Ratliff Aff.; Ex. M, Allman-Douglas Aff.; Ex. S, Ginsbach Aff.; Ex. T, Haase Aff.; Ex. LL, Whitaker Aff.; Ex. MM, N. Wyatt Aff.; Ex.NN, T. Wyatt Aff. Additionally, approximately 40 opt-in plaintiffs from across the country have filed consents with the Court indicating significant interest in joining the proposed class. These affirmations and consents are sufficient to show that similarly situated plaintiffs do exist for the purposes of conditional certification.

Driveline's defense that Plaintiff's claims are too individualized to be litigated collective is unavailing at this stage. Driveline argues that Merchandisers had varying duties requiring

varying amounts of administrative time and drive time.  Driveline points to the testimony of both named Plaintiffs and potential class members that the time required for administrative work before and after in-store work varies by job, each Merchandiser does different jobs on any given day, and each Merchandiser performs those jobs at different speeds.  *See* Defs. Br. at 16, 33-34.  Driveline's defense is "relevant to [the] determination of a stage two decertification issue after discovery has closed." *Pereira,* 261 F.R.D. at 66 (E.D. Pa. 2009) (citation omitted); s*ee also Gallagher v. Lackawana County,* No. 07-912, 2008 U.S. Dist. LEXIS 43722, at *28 (M.D. Pa. May 30, 2008) ("[E]vidence offered by defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery during the step-two analysis, does not compel denial of conditional certification."); *Chabrier*, 2006 WL 3742774, *4 (E.D. Pa. Dec. 13, 2006) (conditionally certifying a class where the proposed class members shared common supervisors and common questions of fact regarding these supervisors' instructions about recording time and falsifying time records despite allegations that each plaintiffs' time recording practices and paycheck history would have to be evaluated individually).

### IV.    CONCLUSION

In summary, because named Plaintiffs have made a modest factual showing that they are similarly situated to the proposed class members with respect to Driveline's payroll and compensation policies, I will grant Plaintiffs' motion for conditional certification of a class comprised of all persons who are or were employed by Driveline as merchandisers of any kind during the three years preceding the filing of this lawsuit.  I will also order Driveline to provide Plaintiffs' attorneys with the names and last known contact information for all potential class members and authorize the sending of the proposed class notice, including the 120-day opt-in period, to all potential class members.

       s/Anita B. Brody

       _____
       ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:       Copies **MAILED** on _____ to: