## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORI S. MOTT; VICTORIA BATES;  )
SANDRA CHILANO; JANET CLOUTIER;  )
CYNTHIA COTTEN; SUSAN GIBBS;  )
JERVONNE HAITH; SUSAN MOORE;  )
HOWARD DARNELL PATTERSON and  )
JUDY RATLIFF, on behalf of themselves  )
and all others similarly situated,  )
                                     )
      Plaintiffs,  )      Civil Action No. 12-5244
                                     )
v.  )
                                     )
DRIVELINE RETAIL MERCHANDISING  )
INC.,  )
                                     )
      Defendant.  )

## MOTION FOR PARTIAL SUMMARY
## JUDGMENT AND BRIEF IN SUPPORT

Dated: July 19, 2017

Thomas G. Wolfe, OBA #11579       Dean F. Murtagh, 19611
Shannon K. Emmons, OBA #14272    Michael J. Dolan, 88783
Clayton D. Ketter, OBA #30611      GERMAN, GALLAGHER & MURTAGH, P.C.
PHILLIPS MURRAH P.C.              The Bellvue
Corporate Tower / Thirteenth Floor    200 S. Broad Street, Suite 500
101 North Robinson                 Philadelphia, Pennsylvania 19102
Oklahoma City, OK  73102        Telephone:   (215) 545-7700
Telephone:   (405) 235-4100     Facsimile:   (215) 732-4182
Facsimile:   (405) 235-4133

***Attorneys for Defendant Driveline Retail Merchandising Inc.***

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.    UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1-6

III.    ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-15

    A.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

    B.    THE EVIDENCE IS UNCONTESTED THAT BECAUSE
           DRIVELINE DOES NOT HAVE A POLICY AND PRACTICE
           OF REQUIRING MERCHANDISERS TO PERFORM
           COMPENSABLE WORK EITHER IMMEDIATELY BEFORE
           OR AFTER THEIR COMMUTES, THE CONTINUOUS
           WORKDAY RULE DOES NOT APPLY. . . . . . . . . . . . . . . . . . . . . .7-15

           1.    Because Driveline's Policy was not to Require
                 Class Members to Work at Home Immediately Before
                 and After Travelling to the Retail Work Sites, Commute
                 Time from Home to the Job Site is not Compensable. . . . . . . . . . .8-9

                a.    Normal Travel Time is not Compensable. . . . . . . . . . . . . .8-9

                b.    Pre and Post-Work Administrative Tasks are not
                      "Integral and Indispensable" if the Employer
                      Policy Permits Employees Flexibility in Completing
                      these Tasks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-13

                c.    The Record is Clear: Driveline has no Policy
                      Requiring Class Members to Work at Home
                      Immediately Before And/or After Working at Any
                      Retail Work Site. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

## TABLE OF AUTHORITIES

**Supreme Court Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-8

*Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014) . . . . . . . . . . . . . . . . . . . 9

**Other Federal Cases:**

*Bettger v. Crossmark, Inc.*,
   No. 1:13-CV-2030, 2014 WL 2738536 (M.D. Pa. June 17, 2014) . . . . . . . . . .12, 13

*Bowman v. CROSSMARK, Inc.*,
   No. 3:09-cv-16, 2010 WL 2837519 (E.D. Tenn. July 19, 2010) . . . . . . . . . . . . . .12

*Garcia v. Crossmark*, Inc.,
   Case 1:13-CV-00693-MV-LAM,
   157 F. Supp. 3d 1046 (D.N.M. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 13

*Kavanaugh v. Grand Union Co.*, 192 F.3d 269 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . 8, 9

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) . . . . . . . . . 8-9, 10-11, 12, 13

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) . . . . . . . . . . . . . . . . . 7

*Pircmataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265 (3d Cir. 2010) . . . . . . . . . . . . . . 7

*Postiglione v. CROSSMARK, Inc.*,
   Civ. No. 11-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012) . . . . . .11-12, 13, 15

*Roath v. Crossmark, Inc.*,
   Case No. 4:13-CV-00758-BCW,
   2014 WL 12586110 (W.D. Mo. Sep. 26, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . .11, 12, 13

*Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th Cir. 2006) . . . . . . . . . . . . . . . . . 9

*Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687 (E.D. Pa. 2011) . . . . . . . . . . . . . . . . 7

*Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Wren v. RGIS Inventory Specialists*,
     No. C-06-05779 JCS, 2009 WL 2612307 (N.D. Cal. Aug. 24, 2009) . . . . . . . . . .9

**Federal Statutes and Rules:**

29 U.S.C. § 254(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

Federal Rule Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

**Regulations:**

29 C.F.R. § 785.16(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 785.35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 9

29 C.F.R. § 790.6(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

**Other:**

Department of Labor Op.,
     1999 WL 1002360 (DOL WAGE-HOUR) (Jan. 29, 1999) . . . . . . . . . . . . . . . . . .7

## MOTION FOR PARTIAL SUMMARY
## JUDGMENT AND BRIEF IN SUPPORT

Defendant Driveline Retail Merchandising Inc. ("Driveline") respectfully moves the Court, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56, for partial summary judgment. The uncontroverted evidence establishes that Plaintiffs are not entitled to compensation for their commute time.

## I.      INTRODUCTION

Plaintiffs claim that Driveline violates the Fair Labor Standards Act (FLSA) by not paying merchandisers for their commute time either from home to the first project of the day or from the last project of the day to home. They argue that Driveline requires them to log on to their computers at the beginning of each work day to obtain instructions for the coming day, and to log on to their computers at the end of each work day to report. Therefore, applying the "continuous workday rule," Plaintiffs claim they are entitled to their drive time from their homes to their first job of the day and from their last job of the day to their homes. Because the evidence reveals that Plaintiffs are not entitled to application of the "continuous workday rule," Driveline is not required to compensate for merchandiser commutes, and, therefore, is entitled to judgment as a matter of law.

## II.     UNDISPUTED MATERIAL FACTS

1.      Driveline provides manufacturers and retailers with retail merchandising services throughout the United States. *See* Aff. of L. Bennett attached as Exh. 1 at ¶ 2.

2.      Merchandising refers generally to the display or promotion of products for retail sale. *Id*. at ¶ 3.

3.      Merchandising includes not only the placement of products and promotional materials in retail stores, but also related activities such as conducting inventories and audits to ensure that the products are properly placed in the stores. *Id.*

4.      Driveline provides these services–which vary from customer to customer and, for each customer, from project to project–through retail "merchandisers." *Id.* at ¶ 4.

5.      The merchandiser can log on to any computer to access the Driveline intranet. *See Id.* at ¶ 33; *see also, e.g.*, Dep. Tr. of R. Hurt attached as Exh. 2 at 17; Dep. Tr. of C. Karver attached as Exh. 3 at 19.

6.      Some merchandisers used Driveline's mobile app to access the intranet. *See* Dep. Tr. of M. McKenney attached as Exh. 4 at 42; Dep. Tr. of W. Rihel attached as Exh. 5 at 31-32; Dep. Tr. of P. Swan attached as Exh. 6 at 13.

7.      Merchandisers set their own schedules deciding when to complete projects prior to the completion date. *See* Exh. 1 at ¶ 34.

8.      While Driveline advises the merchandiser that they should complete projects by a certain date, in all but rare instances, the merchandiser may complete a project on any day prior to the completion date. *Id.*

9.      Merchandisers have autonomy as to when and where they perform any administrative tasks such as checking the Driveline portal or mobile app, printing documents, uploading photos, *etc. See, e.g.*, Exh. 1 at ¶ 35; Exh. 2 at 24-25; Exh. 5 at 39; Exh. 6 at 19, 24; Dep. Tr. of D. Cornillez attached as Exh. 7 at 26, 35; Dep. Tr. of B. Knoflick attached as Exh. 8 at 21-23, 26-27; Dep. Tr. of B. Papi attached as Exh. 9 at 34; Dep. Tr. of K. Slocum attached as Exh. 10   at 27-28; Dep. Tr. of J. Stell attached as Exh.

11 at 30-32; Dep. Tr. of S. Ardion-Johnson attached as Exh. 12 at 44-45, 51; Dep. Tr. of

B. Bellen attached as Exh. 13 at 15-16; Dep. Tr. of B. Burbank attached as Exh. 14 at 10;

Dep. Tr. of S. Collins attached as Exh. 15 at 26-30; Dep. Tr. of C. Davenport attached as

Exh. 16 at 33-34, 36-37; Dep. Tr. of B. Ferster attached as Exh. 17 at 26-27, 33; Dep. Tr.

of H. Hochstetter attached as Exh. 18 at 17, 19; Dep. Tr. of P. Hoskins attached as Exh. 19

at 25-28; Dep. Tr. of M. Hughes attached as Exh. 20 at 20; Dep. Tr. of M. Minard attached

as Exh. 21 at 19; Dep. Tr. of S. Myers attached as Exh. 22 at 23-24; Dep. Tr. of R. Patten

attached as Exh. 23 at 52; Dep. Tr. of V. Ranieri attached as Exh. 24 at 25;Dep. Tr. of D.

Shaw attached as Exh. 25 at 32, 36; Dep. Tr. of R. Urbanowski attached as Exh. 26 at 33;

Dep. Tr. of K. Kettlekamp attached as Exh. 27 at 38, 44; Dep. Tr. of M. Knochel attached

as Exh. 28 at 22-23; Dep. Tr. of T. Barnett attached as Exh. 29 at 20; Dep. Tr. of K. Burke

attached as Exh. 30 at 41-42; Dep. of J. Beck attached as Exh. 31 at 35-36.

10.     One Plaintiff testified that she worked for Driveline and another employer

on the same day, and she could return calls and review emails for her other employer when

she had completed a project for Driveline. *See* Dep. Tr. of M. King attached as Exh. 32 at

20-22.

11.     If required to print documents or confirm completion of a project, Driveline

does not require merchandises perform these tasks from home. *See, e.g.*, Exh. 2 at 16-17;

Exh. 4 at 42-43; Exh. 7 at 20-21; Exh. 8 at 25-27; Exh. 12 at 44-45; Exh. 13 at 15; Exh. 14

at 10; Exh. 16 at 33-34, 36-37; Exh. 17 at 20-21; Exh. 20 at 18-19; Exh. 28 at 16.

12.     Driveline does not require merchandisers to perform any administrative tasks

either immediately before leaving or after returning home. *See* Exh. 1 at ¶ 36; *see also, e.g.*,

Exh. 2 at 24-26; Exh. 4 at 54, 59, 65, 79, 103-104; Exh. 6 at 18-19; Exh. 7 at 33-34; Exh. 8 at 25-27; Exh. 9 at 22, 34; Exh. 10 at 27-28; Exh.11 at 30-31; Exh. 12 at 44-45, 51, 84; Exh. 13 at 15-16, 20, 22; Exh. 14 at 10, 14-15; Exh. 15 at 17, 26-28, 32-33; Exh. 16 at 33-34, 36-37, 46; Exh. 17 at 22, 26-27, 33; Exh. 18 at 17, 19-20; Exh. 19 at 25-28; Exh. 20 at 20, 33-34; Exh. 21 at 19, 22-25; Exh. 22 at 22-24; Exh. 23 at 28-29, 52; Exh. 24 at 33-34, 36; Exh. 25 at 32-33, 35-36; Exh. 27 at 38, 44; Exh. 28 at 22-23; Exh. 29 at 20; Exh. 30 at 41-42; Exh. 31 at 35-36; Dep. Tr. of C. Austin-Cash attached as Exh. 33 at 28; Dep. Tr. of A. Barlow attached as Exh. 34 at 61; Dep. Tr. of L. McRae attached as Exh. 35 at 33; Dep. Tr. of C. Oliver attached as Exh. 36 at 81; Dep. Tr. of M. Peterson attached as Exh. 37 at 19-21.

13.     Because merchandisers may receive project information a week or more in advance, merchandisers can, and do, print documents days before completing the project in the store. *See* Exh. 1 at ¶ 40; *See also, e.g.*, Exh. 2 at 21; Exh. 4 at 48; Exh. 5 at 34; Exh. 8 at 21-23; Exh. 9 at 29-30; Exh. 10 at 25; Exh. 11 at 28; Exh. 12 at 51, 57-58; Exh. 13 at 16; Exh. 14 at 13-14; Exh. 17 at 24; Exh. 18 at 17; Exh. 21 at 21; Exh. 22 at 20-21; Exh. 24 at 27-28; Exh. 25 at 25; Exh. 26 at 33; Exh. 28 at 19; Exh. 29 at 17; Exh. 30 at 36; Exh. 31 at 29; Exh. 35 at 29-30; Exh. 37 at 18-19.

14.     Merchandisers could, and did, print necessary documents at any time after accepting the project. *See, e.g.*, Exh. 1, ¶ 40; *see also* Exh. 9 at 29; Exh. 10 at 25; Exh. 15 at 22; Exh. 37 at 19; Dep. Tr. of S. Moore attached as Exh. 38 at 8.

15.     Driveline does not require merchandisers to log on to the Driveline intranet immediately before going to the first retail store on a given day. *See* Exh. 1 at ¶¶ 38.

16.    A merchandiser is free to check the Driveline portal in the morning, then make breakfast, take children to school, *etc.* before driving to the first store of the day. *Id.* at ¶ 39. *See also*, *e.g.*, Exh. 4 at 88; Exh. 35 at 33.

17.    Many Plaintiffs testified that, by habit, they logged-on to the intranet each working day before leaving home. *See, e.g.*, Exh. 2 at 38-39; Exh. 5 at 65-68; Exh. 4 at 98-110; Exh. 7 at 28-31; Exh. 8 at 33-39; Exh. 9   at 31-33; Exh. 11   at 40-50; Exh. 13 at 33-35; Exh. 14 at 25-28; Exh. 15 at 44-52; Exh. 16 at 62-67; Exh. 17 at 45-52; Exh. 18 at 26-28; Exh. 20 at 39-40; Exh. 21 at 42-52; Exh. 23 at 46-50; Exh. 24 at 61-65; Exh. 26 at 38; Exh. 27 at 64-68; Exh. 29 at 18-19, 32-37; Exh. 31 at 27-31; Exh. 35 at 54-57; Exh. 37 at 23-31.

18.    However, Driveline's electronic records show that, despite their testimony to the contrary, many Plaintiffs did not log in every morning before going to the retail stores to work. *See* Aff. A. Marty attached as Exh. 39 at ¶ 3.

19.    Likewise, the electronic records disprove testimony of Plaintiffs that they logged into the Driveline intranet many evenings after returning from the last store. *Id.*

20.    Regardless, the deponents who were asked the question agreed that Driveline had no company-wide policy requiring them to log-on each morning. *See, e.g.*, Exh. 1, ¶ 36; *see also* Exh. 8 at 25; Exh. 9 at 34; Exh. 14 at 10.

21.    The merchandiser is free to leave the last store of the day, go out for dinner or wait until late in the night to perform any administrative work. *See, e.g.*, Exh. 1 at ¶ 40 30; Exh. 4 at 68; Exh. 7 at 34; Exh. 8 at 27; Exh. 9 at 22; Exh. 11 at 30; Exh. 18 at 19-21; Exh. 19 at 26-27; Exh. 22 at 23-24; Exh. 37 at 20-21; Dep. Tr. of R. Huggins attached as

Exh. 40 at 65; Dep. Tr. R. McKenney attached as Exh. 41 at 38-39; Dep. Tr. J. Parker attached as Exh. 42 at 31.

22.    Merchandisers agreed that, after they complete in-store tasks, they might need to report the work (including uploading any necessary work orders and digital photographs) by midnight on the day the project was completed. *See* Terms and Acceptance attached as Exh. 43; *see also, e.g.*, Exh. 4 at 47; Exh. 11 at 31; Exh. 12 at 64, 83-84; Exh. 13 at 18; Exh. 15 at 31-32; Exh. 16 at 37, 46; Exh. 17 at 22; Exh. 20 at 20, 41; Exh. 21 at 19; Exh. 24 at 33-34; Exh. 25 at 20, 30; Exh. 26 at 34, 75; Exh. 35 at 36-37; Exh. 37 at 21; Dep. Tr. of C. Thurston attached as Exh. 44 at 27.

23.    Several Plaintiffs testified that if they missed the deadline, they could report completion to their manager. *See, e.g.*, Exh. 11 at 31;

Exh. 31 at 31-32.

24.    Although not legally required to do so, Driveline pays for drive-time from home to the first store if a merchandiser lives more than thirty miles from the first store at which the merchandiser needs to work. *See* Exh. 1 at ¶ 44.

25.    Similarly, if the last store in a merchandiser's day is more than thirty miles from home, Driveline will compensate his or her drive-time. *Id.*

## III.   ARGUMENTS

### A.   STANDARD OF REVIEW

A party is entitled to summary judgment, if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 (1986). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation and quotation marks omitted). The Court views the facts in the light most favorable to the non-movant and makes "all inferences in the nonmoving party's favor." *Pircmataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010). Parties cannot avoid summary judgment with speculation or by resting on the allegations in their pleadings. *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 697 (E.D. Pa. 2011).

**B.    THE EVIDENCE IS UNCONTESTED THAT BECAUSE DRIVELINE DOES NOT HAVE A POLICY AND PRACTICE OF REQUIRING MERCHANDISERS TO PERFORM COMPENSABLE WORK EITHER IMMEDIATELY BEFORE OR AFTER THEIR COMMUTES, THE CONTINUOUS WORKDAY RULE DOES NOT APPLY.**

Driveline does not compensate for time spent commuting to the first job of the day or from the last job of the day. This policy is legal. 29 C.F.R. § 785.35 (stating that normal commuting time is not compensable); *see also* Department of Labor Op., 1999 WL 1002360 (DOL WAGE-HOUR), at * 2 (Jan. 29, 1999) ("We would not take exception to a practice that treats one hour of commuting time as non-compensable home-to-work travel, and that treats all travel time in excess of that amount as hours worked.").

Plaintiffs argue, however, that because they start work before traveling to their first job and continue working after they arrive home from their last job, their commute time is compensable. "The Department of Labor has adopted the continuous workday rule, which

means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employees' principal activity or activities." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) (quoting 29 C.F.R. § 790.6(b)). Assuming solely for the sake of argument that the administrative tasks Plaintiffs may perform are, in fact, integral to their jobs, they nonetheless fail to establish that engaging in pre- and/or post-liminary administrative tasks either commences or completes their workdays.

> 1. **Because Driveline's Policy was not to Require Class Members to Work at Home Immediately Before and After Travelling to the Retail Work Sites, Commute Time from Home to the Job Site is not Compensable.**

> > a. **Normal Travel Time is not Compensable.**

"[A]n employer is not required [] to compensate an employee for all of the employee's time that is associated with work." *Kavanaugh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999). The rule, "is and always has been that the FLSA does not treat ordinary home-to-job-site travel as compensable." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 360 (2d Cir. 2011). Pursuant to the Portal-to-Portal Act, employers need not compensate employees for:

> > (1) ....traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and

> > (2) activities which are preliminary to or postliminary to said principal activity or activities,

> Which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). "Principal activity" means "all activities which are an integral and indispensable part of the principal activities." *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014) (citations omitted). An activity is "integral and indispensable" if it "is an intrinsic element of [the principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

Federal regulations further explain the distinction between incidental and principal activities with regard to travel time:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.

29 C.F.R. § 785.35.

"Normal travel" is governed by "a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Kavanagh*, 192 F.3d at 272. So long as the commute time is ordinary for the particular employer/employee relationship, it is noncompensable commute time. *Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994) (concluding that farm workers' travel time on a bus, sometimes in excess of two hours, was not compensable where extended travel was a normal job requirement); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1291-92 (10th Cir. 2006) (holding that workers were not entitled to compensation for travel from home to the first jobsite even though such travel ranged from thirty minutes to three and a half hours each way); *Wren v. RGIS Inventory Specialists*, No. C-06-05779 JCS, 2009 WL 2612307, at *7 (N.D. Cal. Aug. 24, 2009) (finding that commute time of less than one hour was not compensable).

b.   **Pre and Post-Work Administrative Tasks are not "Integral and Indispensable" if the Employer Policy Permits Employees Flexibility in Completing these Tasks.**

In *Kuebel, supra*, Kuebel, a "Retail Specialist" for Black & Decker ("B&D"), was responsible for merchandising and marketing B&D's products at six Home Depot stores located in his territory. The stores were twenty minutes to three hours from his home by car. Rather than reporting to an office, Kuebel worked from home and commuted to the various stores from home. B&D required him to record the time he entered and exited each store on a company-issued PDA which was synchronized to B&D's server.

Significantly, B&D did not require any employee to synchronize his or her PDA at any particular time. Although synchronizing to the server took little time, Kuebel also read and responded to company e-mail, checked voicemail, reviewed sales reports, and prepared for his store visits. B&D required Kuebel to record time spent performing these activities for which B&D paid. B&D also paid for time commuting in accordance with its commuting policy which provided that time spent traveling in excess of sixty miles was compensable, but time spent traveling of less than sixty miles or sixty minutes was not compensable.

Like Ms. Mott, Kuebel sued B&D arguing that time spent commuting to the first and from the last work assignment of the day, even if less than that covered by the commuting policy, was compensable under the FLSA and state law. Attempting to apply the "continuous workday" rule, Kuebel claimed that his workday began when he checked e-mail, voicemail, and performed other tasks before he left home and that the workday did not end until he completed work-related tasks after he returned home at the end of the day.

On appeal, the Second Circuit first noted "the fact that Kuebel performs some administrative tasks at home, on his own schedule, does not make his commute time compensable any more than it makes his sleep time or his dinner time compensable." 643 F.3d at 360. Because the record demonstrated that Kuebel "had flexibility in deciding when to complete his daily administrative" tasks, he failed to establish that these tasks were part of his continuous workday. *Id.* at 361. In reaching its determination, the court noted that under the pertinent regulation (29 C.F.R. § 785.16(a)) "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." *See also* In *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010) (observing that because the employer did not require employees to engage in compensable work either immediately before leaving home or immediately upon returning home, plaintiff was not entitled to compensation for his commute time); *Garcia v. Crossmark*, Inc., Case 1:13-CV-00693-MV-LAM, 157 F. Supp. 3d 1046, 1049 (D.N.M. 2015) (concluding that plaintiff offered no evidence that Crossmark required her to complete administrative tasks "*immediately* before or after her commute." *Id.* at 1046 (emphasis added)).

Judge Shapiro has previously rejected claims made by merchandisers under almost identical facts. *Postiglione v. CROSSMARK, Inc.*, Civ. No. 11-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012).[1] In *Postiglione*, plaintiffs, merchandisers like Plaintiffs here,

---

[1] CROSSMARK is a competitor of Driveline and the two companies have very similar compensation procedures. Additionally, Plaintiffs' counsel in this case represented plaintiffs in the *Postiglione* case. Thus, Judge Shapiro's resolution of the certification issue in *Pastiglione* is highly instructive to the Court in this case.

claimed that their drive time to and from their first and last jobs was compensable under the "continuous work day rule."[2] The Court noted that application of the rule rests on "when and where the retail representatives were required to perform their administrative tasks." *Id*. at * 19. If plaintiff is "relieved from duty . . . long enough to enable him to use the time [] for his own purposes," the rule does not apply. *Id*. at *20. The *Postiglione* Court observed that if employer CROSSMARK did not require plaintiffs to return home immediately after their last job (and, likewise, if it did not require them to obtain work assignments immediately before starting work), the rule would not apply. *Id*.

As *Kuebel*, *Rutti*, *Garcia*, and *Postiglione* (all of which are almost factually indistinguishable from this case) amply demonstrate, the operative question is whether the employer policy is to require that employees complete administrative tasks either immediately prior to leaving home for the first store of the day or immediately upon returning home from the last store of the day. If the employee retains flexibility to set his or her own schedule, then regardless of the time the employee opts to perform any necessary tasks is immaterial. The evidence here unequivocally shows that class members had discretion and flexibility in determining when to complete any administrative tasks.

---

[2] *See also Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2014 WL 2738536, at * 6 (M.D. Pa. June 17, 2014) (granting summary judgment on plaintiff's continuous workday claim as to morning commute time); *Roath v. Crossmark, Inc*., Case No. 4:13-CV-00758-BCW, 2014 WL 12586110, at *4 (W.D. Mo. Sep. 26, 2014) (granting Crossmark summary judgment on the merchandiser's claim that Crossmark violated the FLSA by failing to pay for time spent driving to that particular day's first work location from the day's last retail location). Similarly, district courts have rejected collective action certification against CROSSMARK. *Bowman v. CROSSMARK, Inc.*, No. 3:09-cv-16, 2010 WL 2837519, at * 8 (E.D. Tenn. July 19, 2010).

As such, Driveline is not required to compensate them for their commute to and from home to the retail stores where they performed merchandising services.

### c.   The Record is Clear: Driveline has no Policy Requiring Class Members to Work at Home Immediately Before and/or After Working at Any Retail Work Site.

Here the evidence unequivocally shows that Driveline's policy is to permit merchandisers complete flexibility both in performing their assigned projects and any attendant administrative tasks. At best, Plaintiffs' evidence demonstrates that they may have formulated their own routines where they opted to perform administrative tasks before leaving home in the morning, and after returning home at night. The record is deafeningly silent, however, that Driveline demanded that its merchandisers abide by a set schedule or perform administrative tasks at a specific time. Absent the latter evidence, the claims must fail.

Notably, Driveline pays drive-time for travel to the first store over thirty miles and from the last store over thirty miles (which the merchandiser must submit when closing the project). *See* Undisputed Material Fact ("UMF") 24, 25. Driveline admittedly does not pay for normal commute time.

Like the employees in *Kuebel*, *Rutti*, *Garcia*, and *Postiglione*, Driveline merchandisers set their own schedules deciding when to complete projects prior to the completion date. *See* UDF 7. Merchandisers can complete those projects at any time prior to the scheduled completion date during store hours. *See* UDF 8. Second, as in *Kuebel*, *Bettger*, *Roath* and *Garcia*, if a particular job requires the performance of administrative

13

tasks, such as checking the Driveline portal or mobile app, printing documents, uploading photos, class members have complete flexibility to decide when to perform them. *See* UDF 9.

If required, the merchandiser can print project-related documents, from any computer, at any time after the merchandiser accepts the project. *See* UDF 5. Some merchandisers use a mobile application on their electronic devices to access the intranet, and reportt directly from the store and not from home. *See* UDF 6. In fact, the evidence clearly shows that Plaintiffs do not log on to the intranet every day they perform Driveline work, including Plaintiffs who testified that they logged on to the Driveline intranet every day (both before leaving home and after returning) they worked. *See* UDF 15, 17, 18, 19. Plaintiffs almost uniformly agree that Driveline had no company policy requiring them to log on to the intranet each morning. *See* UDF 20.

Driveline does not require merchandisers to perform any administrative tasks immediately before leaving home. *See* UDF 11, 12, 13, 14. A merchandiser is free to check the Driveline portal in the morning, then make breakfast, take children to school, *etc.* before driving to the first store of the day.  *See* UDF 16. One possible administrative task is printing any necessary project-related documents. However, if required (depending on the type of project and the merchandiser's role, printing project related information is not always required), Driveline does not require merchandisers print from home. *See* UDF 11. Another administrative task that may be required is that a merchandiser confirms completion of the project through the Driveline Intranet. Similarly, Driveline does not require merchandisers to perform any administrative tasks immediately upon returning

home. *See* UDF 12. Merchandisers are free to leave the last store of the day and run errands or engage in personal time before performing any administrative tasks that may be necessary. *See* UDF 21, 22, 23

The facts are uncontroverted that Driveline does not require Plaintiffs to engage in compensable work immediately before leaving home or immediately upon returning home. As *Postiglione* and other cases distinctly hold, Driveline is not required to compensate for normal commute time since merchandisers are free to engage in personal tasks and are completely relieved of duty either before reaching the first store of the day or after leaving the last store of the day. Thus, any administrative tasks in which Plaintiffs must engage is not part of their continuous workday. The Court must reject Plaintiffs' contention that Driveline is required to compensate them for their commute between home and the work.

WHEREFORE, premises considered, Defendant Driveline Retail Merchandising Inc. respectfully prays that the Court grant it judgment on Plaintiffs' assertion that they are entitled to be compensated for their normal commute time.

Dated: July 19, 2017                 Respectfully submitted,

                                     /s/ *Shannon K, Emmons*
                                     Thomas G. Wolfe, OBA #11579
                                     Shannon K. Emmons, OBA #14272
                                     Clayton D. Ketter, OBA #30611
                                     PHILLIPS MURRAH P.C.
                                     Corporate Tower / Thirteenth Floor
                                     101 North Robinson
                                     Oklahoma City, OK  73102
                                     Telephone:   (405) 235-4100
                                     Facsimile:   (405) 235-4133
                                     tgwolfe@phillipsmurrah.com
                                     skemmons@phillipsmurrah.com
                                     cdketter@phillipsmurrah.com
                                     (admitted *pro hac vice*)

                                     and

                                     Dean F. Murtagh, 19611
                                     Michael J. Dolan, 88783
                                     GERMAN, GALLAGHER & MURTAGH, P.C.
                                     The Bellvue
                                     200 S. Broad Street, Suite 500
                                     Philadelphia, Pennsylvania 19102
                                     Telephone:   (215) 545-7700
                                     Facsimile:   (215) 732-4182
                                     ggm@ggmfirm.com

                                     ***Attorneys for Defendant,***
                                     ***Driveline Retail Merchandising Inc.***

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on July 19, 2017, a true and correct copy of this instrument was filed electronically, notice of the filing was served on all Counsel by operation of the Court's electronic filing system, and the parties may access this filing by and through the Court's electronic filing system.

Richard P. Myers
PAUL, REICH, & MYERS, PC
1608 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19103
Telephone:   (215) 735-9200
Facsimile:   (215) 735-3888
myersrpm@gmail.com

***Attorneys for Plaintiffs***

/ s/ *Shannon K. Emmons*
Shannon K. Emmons

17